My name is Jason Bach. I'm here on behalf of the appellant in this case. The district court erred when it ruled that Missouri's education malpractice doctrine applies to this case. It simply does not. The education malpractice doctrine does not apply when it's alleged that a school may specifically promise educational services. The education malpractice doctrine applies where the court is asked to interpret or to review the quality of an education, not whether or not a specific service was promised or not, and that's exactly what is alleged here in this case. Our complaint alleges that St. Louis University promised to provide a Ph.D. advisor within a few weeks, but did not for a year and a half. It promised my client to conduct an annual review and discuss and evaluate his progress, but it did not. It promised to schedule a qualifying exam after a year in the program or two semesters into the program, and it waited until after his fourth year to schedule a qualifying exam. And finally, St. Louis University promised to award my client a Ph.D. in mechanical and aerospace engineering after completing a course of study, which he completed, but did not issue the degree. Asking a court to enforce these promises does not require the court to determine if the method of instruction was appropriate or require this court to oversee the day-to-day operations of a school, which is exactly the point of the education malpractice doctrine and why it does not apply in this case. Moving on to the breach of contract allegation that Mr. Sweetan makes in his complaint, the district court again erred when it concluded that Mr. Sweetan had not relied on the promises that were made in the handbook before he enrolled in the program. If one wanted to find the terms of the contract that you're referencing, where would one look to find the terms of the contract? You would look at the handbook that was in place in August of 2012, the handbook that Mr. Sweetan reviewed before he enrolled in the program. So it's your contention that the statements in the handbook constitute an offer or constitute terms of an agreement? How does that operate? Sure. Does the person enroll and then the handbook becomes a contract? Or how does the handbook obtain the status of contract terms? Sure. So what we do is we look at a number of cases in this circuit and across the country that have held that the policies and handbooks that a school publishes and circulates to not only its students but prospective students constitutes a contract or can be interpreted as a contract. Even the cases cited by the university in this case support the fact that Missouri has recognized that these types of handbooks constitute a contract. And you can look at the Roe v. Webster University case, which held that – or I'm sorry, actually it's a case cited by St. Louis University, the Gillis v. Principia Corporation, which held that brochures, policy manuals, and other advertisements may form the basis of a contractual relationship. But the district court ruled in interpreting the complaint to read that Mr. Sweetan did not review the handbook until he was in the program for over a year. And that simply is not what the complaint says, and that's not the case. That is simply not true. And this is an example of one thing that could have easily been remedied had the appellant been given the opportunity to amend the complaint. Now, we think that the complaint is very clear, that at no point in the complaint does it say that Mr. Sweetan did not review the handbook until he was enrolled for a year and a half. He did review the handbook, and he relied on the promises that were made in that handbook before he ever enrolled in the program. In addition, the district court erred in dismissing the fraud allegation that was in this complaint. Misrepresentations that encourage a party to enter into a contract are actionable. And there is case law that we cited throughout our briefs, the Kincaid case, the Web Innovations case, and the Superior Edge case that all support the notion that there can be a fraud allegation when the allegation is that there were misrepresentations made in order to induce you to sign a contract. And we believe that that is the case here. We don't believe that St. Louis University had a Ph.D. program in mechanical and aerospace engineering when they made the promise to my client that not only that they had this program, but that he would be able to complete this program and receive a degree. It became pretty clear after a number of years that, in fact, St. Louis University did not have such a program. In addition, the district court held that Mr. Sweetan could not bring a claim for both breach of contract and fraud. Now, the district court dismissed the breach of contract claim, but then also dismissed the fraud claim based on the fact that Mr. Sweetan had brought a breach of contract claim. It seems that the district court can't have it both ways. You can't say that he's not allowed to bring a fraud claim because he has a breach of contract claim, and then dismiss the breach of contract claim and not address the fraud claim on the merits itself. Also, we believe that the district court misinterpreted the complaint here as well. And this goes to my final argument, is that the district court in this case could have easily, without prejudice to St. Louis University, allowed the appellant to amend the complaint to clear up any confusion that they had. The district court misinterpreted our complaint, even though we believe it was clear. But regardless, the complaint could have been amended to make it clear that Mr. Sweetan did review the handbook before he enrolled in the university and relied upon the statements in the handbook before he enrolled in the university. If this court has no further questions, I will reserve the remainder of my time. Thank you, Mr. Block. Mr. Matthews. May it please the court. I would like to start by addressing one of the statements that Mr. Bock made, which was that we don't believe that SLU had a PhD program. That issue that Mr. Sweetan has asked the court to look into, as well as the other issues, squarely implicates Missouri's educational malpractice doctrine. In order to answer that question, whether or not SLU actually has a PhD program, based upon the facts that were pled, which is that Mr. Sweetan actually spent five years in the PhD program, that Mr. Sweetan was appointed an advisor, Professor Lebeau, that Mr. Sweetan actually sat for the qualifying exam, although later than he expected, that Mr. Sweetan failed to pass the qualifying exam, that Mr. Sweetan was given an opportunity and actually attended a number of conferences with Professor Lebeau in preparation for that exam, and also significantly, that Mr. Sweetan completed over 10 courses for 30 credit hours. So the facts pled actually demonstrate the existence of a program. And what Mr. Sweetan is asking the court to do is to find that, well, we're going to evaluate whether or not that's really good enough in the context of a PhD program for mechanical and aerospace engineering. And that's precisely what Dallas Intermotive, Lucero, and Gillis say that courts will not get into. And really, at the end of the day, the complaint from Mr. Sweetan is that he was not awarded a PhD in aerospace and mechanical engineering. And that's why the educational malpractice doctrine disposes of this case. It disposes of the breach of contract claim, the fraud claim, and the breach of good faith and fair dealing claim. So we know that the harm that Mr. Sweetan has alleged is that he didn't get his PhD. He also asked his court to focus in on what he alleges are really specific breaches. You know, those are the failure to appoint an advisor soon enough, because he admits he was appointed an advisor in December of 2013. The failure to administer the qualifying exam soon enough, because he admits that he ultimately sat for the qualifying exam and did not fully pass. And the failure to provide reviews in January of each year, even though he does state and pleads that he got a lot of feedback from a number of different sources throughout the five and a half years in the program. Now, regardless of how Mr. Sweetan asked the court to break down the analysis, at the end of the day, the question for this court is the same. And all of those discrete issues are really bound up in the overall question of whether or not Mr. Sweetan should have been awarded a PhD after five and a half years. Now, in Gillis, this court has recognized that generally courts have refrained from recognizing educational malpractice claims, either in tort or in contract, on the basis that universities must be allowed the flexibility to manage their own programs. And Gillis sets out a two-point test here. And this is very important. It's not enough to merely allege a discrete promise and a breach. That's the first part of the test. If that is not met, the claim can't go forward at all. But under the educational malpractice doctrine, assuming that is met, the court must take a step back and not make findings of fact at this point, but really ask itself what analysis would be appropriate or would be required in order to get through the claims, and not just the breach element, but all of the elements. And to the extent that any of the analysis would require an analysis of the quality of the education received, whether or not the school educated effectively, whether or not educational services provided were somehow inadequate or substandard, if any of those are implicated as part of the analysis, the claim as a whole is barred. And that's even if the plaintiff alleges, well, there's a specific promise and a specific breach. What's the reason for that rule? I mean, that's taken to its extreme. That could mean it could be open to abuse by universities. I think that, you know, there's no question, right, if you take any rule to its extreme, including this one, that there could be problems. Is there a limiting principle on it then? Yes, I think there are a number of limiting principles, one of which is what courts will look to, and the Weber, excuse me, the Blake court employed this principle. Judge Weber. Judge Weber and the Blake court, which is when you're evaluating some of these discrete breaches, if there's a distinction between a complete absence to perform versus inadequate performance. Okay. So as an example, the complete absence to perform would be that in five and a half years, there was no advisor appointed at all. Okay. That's not what's pled here. What's pled here is really inadequate performance, that the advisor was appointed, but it was late. And that while, you know, maybe I didn't have my formal advisor appointed, it was pled that at the outset of the program, he met with the department chair, developed a plan of study, and in fact took courses throughout that entire period in furtherance of the program. So one of the limiting principles, Your Honor, is the courts will look to whether or not there's a complete absence of performance versus inadequate performance. And inadequate performance really implicates all of these issues about the doctrine, which is how does the court over a five and a half year period determine whether or not Mr. Sui Dan's failure to achieve his Ph.D. was because there was a delay in the appointment of an advisor, or was it because he pled that he failed to fully pass the exam? He also pled that he was not properly prepared for the exam by his advisor, Professor Lebeau. He also pleads that maybe the school didn't dedicate adequate resources to him. And those are exactly the types of inquiries, not that the court has to settle at this point, but that Missouri law says the court will not get into. And if a claim is pled that is asking the court to get into those issues, the claim is barred. There are also some important policy grounds that are underlying this doctrine. They're set forth and discussed in the briefing. I just want to touch on a few of them very quickly now. The first is that one of the policy grounds that supports this is the inherent uncertainties about causation of the nature of damages. And that really touches on what I just went through, which is a court would be required to sort through over a five and a half year period in a Ph.D. program for aerospace engineering and figure out what are the real reasons, what were the real causes for the harm, which is the failure to award the Ph.D. And courts will not engage in that analysis because of all the uncertainties. And some of them that were specifically mentioned in Dallas Aeromotive go to the student and the student's performance, whether or not the student was properly prepared, whether or not the student engaged appropriately with the material, whether or not the student had a bad day on the test. Those are all issues that courts should not be involved in adjudicating. The other policy principle that I'd like to raise is really related, but the possibility that the courts would be embroiled into overseeing the day-to-day operations of the school. And in here, and particularly a Ph.D. program for mechanical and aerospace engineering. And the Missouri policy is that courts should not get into that. Courts should not be in the position of deciding whether or not a Ph.D. should have been awarded or should not have been awarded. That's up to the university, and that's the policy of Missouri law that underlines this doctrine. I also want to touch briefly on leave to amend. So the narrow issue that's before this court on leave to amend is whether or not the district court abused its discretion in denying leave to amend. And there's nothing in the record that indicates that the judge, that the district court abused its discretion. There's a long line of cases in the Eighth Circuit. Wolgin, Novastar, Minneapolis Firefighters, which are all cited in the briefs. They're Eighth Circuit cases from 1983 through 2011 that make it very clear that the district court is not required to guess as to what an amendment may or may not entail. The court is not required to give a litigant a blank check to amend. In fact, the onus is on Mr. Sweetan to apprise the court of precisely what any amendment would look like and how that amendment would cure deficiencies in the complaint. And Mr. Sweetan here did not do that. Within 21 days from the date of filing of the motion to dismiss, Mr. Sweetan, as a matter of right, could have filed an amended complaint. He didn't do that. At any time, Mr. Sweetan could have filed a motion for leave to amend attaching an amended complaint to apprise the court of exactly what he would have fixed. Mr. Sweetan did not do that either. Mr. Sweetan, at a minimum, could have filed a motion for leave to amend and describe to the court all the different reasons why an amendment that he would make would cure the deficiencies and the facts that he would plead that would change the result. Mr. Sweetan did not do that here. Instead, what he did was he included at the end of his opposition to the motion to dismiss a perfunctory paragraph that simply said, if the court disagrees with me, I should have a chance to do it again. And that's not enough. And it certainly does not give rise to an abuse of the discretion where the district court said that I will not grant leave to amend. If the court doesn't have any other questions, I'll conclude my argument and ask this court to affirm the district court's decision in all respects. Thank you, Mr. Matthews.  Thank you. St. Louis University took almost a quarter million dollars from Mr. Sweetan for a degree in a program that simply didn't exist. That does not require this court to micromanage a school or their program to simply look at whether or not they even had this program that Mr. Sweetan paid for. I want to point to a couple of cases that St. Louis University has decided to hear throughout their briefs. First, the Gillis case, which I think is highly distinguishable from this case that is before the court today. In the Gillis case, this court ruled that that ruling was not based on the education malpractice doctrine. That ruling was based on the fact that the school had not made, or that the plaintiff in that case could not demonstrate any promises, any specific promises that the school made to them. Even at oral argument, this court cited in their decision that the council could not cite at oral argument any specific promises that the school made. That is not the case here. We have cited to a number of promises, specific promises that the school has made. The Lucero case is another case that is cited throughout the briefs from St. Louis University, and that's a very different case as well. That is a case asking the court to essentially get involved in the supervision of their own employees, of their own instructors, their own professors. That's not what we're asking here. This is a very different case than the cases cited by the university here. Finally, the issue of the amended complaint. It would have been impossible for the plaintiffs to know what the court would misinterpret in their complaint. It would have been impossible for the appellants to guess at these issues that the court raised, because these weren't even issues that were a principal argument made by St. Louis University. The district court essentially came up with these issues on their own when it ruled that Mr. Sweetan had not relied on the handbook, that he didn't even look at the handbook until 2013. That's simply not true. The complaint does not say that, and if that is a question, then that portion of the complaint can certainly be amended very easily without prejudice to any party to make that clear. The fact that Mr. Sweetan did not attach an amended complaint to his opposition or file a motion for leave to amend the complaint is not a central issue here, considering that Mr. Sweetan simply did not have the opportunity to know until a judgment had been entered by the district court that these were issues in the mind of the court that needed to be clarified. Well, certainly, once you are aware of that, it would have been possible to file a motion to reconsider, and within that motion to reconsider, point out these errors and say, we move to amend our complaint to address this question, and here's the amended complaint, right? Well, we could have done that in theory, but keep in mind that the judge granted their motion to dismiss and simultaneously entered a judgment in their favor. A judgment had been entered. So we would be asking the court to reconsider their previous decision after a judgment had been entered. We felt it was more prudent to simply file a notice of appeal and bring up these issues on appeal because obviously there was also the issue of the education malpractice that we felt that the district court had simply misinterpreted the law on, and an amended complaint would not have corrected their misinterpretation of the law, we believe. And if the court has no further questions, I will submit. Thank you. Thank you, Mr. Bach. The court thanks both counsel for the arguments you provided to the court. The briefing that you've submitted will take your case under advisement. If you'll excuse me.